# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-CR-119 (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ON OBJECTIONS TO REPORT AND RECOMMENDATION |
| DESCART AUSTIN BEGAY, JR., | |
| Defendant. | |

The United States charged Descart Austin Begay, Jr. with one count of aggravated sexual abuse and one count of sexual abuse in violation of 18 U.S.C. Sections 2241(a) and 2242(1). (ECF No. 1.) Begay moves to suppress all evidence related to his tribal conviction for the same conduct. (ECF Nos. 26, 27.) In a Report and Recommendation dated January 6, 2022, United States Magistrate Judge Leo I. Brisbois recommends that the Court deny Begay's motions to suppress. (ECF No. 81 ("R&R").) Begay objects to the R&R. (ECF No. 82 ("Obj.").) For the following reasons, the Court overrules Begay's objections and accepts the R&R.

## BACKGROUND

Begay disputes parts of the R&R's recitation of the facts, so the Court lays out the facts necessary to rule on the objections and incorporates undisputed facts by reference to the R&R.

## I.    Arrest and Interrogation

On July 3, 2020, Red Lake law enforcement arrested Begay on suspicion that he committed an assault on the reservation. (R&R at 12.) Three days later, FBI Special Agent Justin Montgomery interrogated Begay while he was in Red Lake custody. (Gov't Ex. 1. (recording of the interview).) Montgomery recorded the nearly 50-minute interrogation. (*Id.*)

Early in the recording, Begay cried, asking, "Am I going to prison or something?" (*Id.* at 0:13–0:15.) In a calm tone, an officer responded saying, "Right now, he's just going to speak with you." (*Id.* at 0:16–0:18.) Again crying, Begay responded, "I don't know what's going on. I'm sorry." (*Id.* at 0:20–0:22.) The officer responded, "That's okay." (*Id.* at 0:22.)

Before Montgomery began questioning, he explained that Begay had a right to remain silent, a right to an attorney, including an attorney provided free of charge if Begay could not afford one. (*Id.* at 0:27–0:52.) Montgomery also explained that Begay could stop talking at any time if he changed his mind. (*Id.* at 0:52–0:56.)

Begay, no longer crying, explained, "I'm not very bright. My mom is usually my signer . . . cause I don't know how to spell. I don't know how to read." (*Id.* at 0:57–1:07.) He informed Montgomery that his mother counseled him not to say anything. (*Id.* at 1:12–1:19.) Begay said several times that he did not know what was going on or what to do. (*Id.* at 1:14–1:42.)

Montgomery then asked Begay, "Did you understand everything I just read to you?" (*Id.* at 1:30–1:32.) Begay slowly said, "Yeah, yeah, yeah." (*Id.* at 1:32–1:34.) Montgomery is apparently referring to a written waiver of rights that was read to Begay. (*Id.* at 1:31–1:36.) Montgomery offered Begay a chance to seek clarification about his rights, asking, "Do you have any questions about it?" (*Id.* at 1:35–1:36.) Begay started to cry again, asking, "Why is this happening?" (*Id.* at 1:39.)

Montgomery explained that Begay was in custody because someone accused him of violating the law on Friday night, that Montgomery wanted to hear Begay's side of the story, and that Begay was brought in for a DNA swab. (*Id.* at 1:44–2:05.) Montgomery also explained that Begay could decide whether to have a DNA swab. (*Id.* at 2:07–2:12.) A second officer told Begay, "It's totally your decision what we do in here." (*Id.* at 2:10–2:13.)

Begay then asked, "What do you want to hear from me?" (*Id.* at 2:14–2:16.) Montgomery acknowledged that Begay had trouble reading and again asked Begay whether he understood everything Montgomery told him. (*Id.* at 2:33–2:41.) Begay responded, "yeah," and then asked Montgomery questions about the DNA swab. (*Id.* at 2:35–2:46.) Begay did not ask any questions about his right to remain silent or his right to counsel. (*Id.*)

Montgomery then explained that to have further discussion, Begay must waive his

rights. (*Id.* at 3:00–3:15.) Begay indicated a desire to talk, saying, "Yeah . . . I'm in trouble

anyways," and then signed the written waiver. (*Id.* at 3:16–3:20.)

## II.     Tribal Court Proceedings

In July 2020, the Red Lake Nation Tribal Court arraigned Begay. (Gov't Ex. 5

(recording of the arraignment hearing).) As required by Red Lake Code, the tribal court

recorded the proceeding. (*Id.*) After the case was called, and without reading Begay his

rights, the tribal judge asked Begay if he understood his rights. (*Id.* at 0:10–0:21.) Begay's

response is unintelligible on the recording. (*Id.* at 0:15–0:25.) The tribal judge seemed

satisfied that Begay understood his rights, though, because he confirmed by asking again,

"You understand?" before moving on. (*Id.* at 0:20–0:22.) Again, there is no response from

Begay that can be discerned from the recording. (*Id.*)

The next month, Begay appeared at a pretrial conference that lasted less than three

minutes. (Gov't Ex. 6 (recording of the pretrial conference).) The tribal court also recorded

the pretrial conference. (*Id.*) The tribal court called the case to start the proceeding. (*Id.* at

0:00–0:16.) Begay said nothing, and the tribal court did not advise Begay of his rights. (*See

generally id.*)

Then, seven months after his initial incarceration, Begay pled guilty. (Gov't Ex. 4.)

At a plea hearing, Begay pled guilty on the charge of aggravated sexual assault and

breaking and entering and agreed to a 365-day sentence with conditions. (*Id.*) The record

4

also contains a "proposed plea agreement," which Begay signed twice—once on the line

for the defendant and once the line for defense counsel. (*Id.*) It is unclear whether Begay

had counsel at the exact time Begay signed the plea. (*Id.*) A tribal court order documents

the plea hearing; it records the plea and the sentence of 365 days. (*Id.*)

Begay apparently had counsel at his plea hearing because a representative can be

heard on the two-minute recording of the hearing.[1] (Gov't Ex. 7 (recording of the plea

hearing); *see also* Gov't Ex. 4 (Court Order stating that defense counsel was present at the

hearing).) The recording did not document the entire hearing. Unlike the other recordings

of proceedings in this case, the recording of the plea hearing does not start with the court

calling the case. (Gov't Ex. 7.) It starts in the middle or the end of the hearing, with a

conversation between Begay or his representative and a court official. (*Id.* at 0:00–0:21.)

The recording captures only sentencing—it does not document an inquiry by the tribal

court into whether Begay understood the proceedings, the plea agreement, or whether

anyone explained the agreement to Begay. (*See generally id.*) Nor does it include an

allocution by Begay or Begay's entry of a guilty plea. (*Id.*)

III.     **Federal Prosecution**

Five days after Begay pled guilty in tribal court, the FBI asked Red Lake law

enforcement to share Begay's tribal criminal history. (ECF No. 66 at 83.) The FBI admits

---

[1] Consistent with tribal law, Begay was represented by lay counsel—not a licensed attorney. (Gov't Ex. 7; Obj. at 9; ECF No. 86 at 7.)

the timing of this request is unusual; the FBI typically requests tribal criminal history

"within a couple weeks of the FBI opening the case." (ECF No. 67 at 13.) After the plea,

the federal government indicted Begay, and a grand jury returned the two-count

indictment. (ECF No. 1.) Begay moves to suppress his tribal court plea and the interview

with Montgomery to prevent the government from introducing them at trial in this case.

(ECF Nos. 26, 27.)

## ANALYSIS

The Court has reviewed the R&R *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim.

P. 59(b)(3); D. Minn. LR 72.2(b)(3). Based on that *de novo* review, the Court overrules

Begay's objection, accepts the R&R, and denies Begay's motions to suppress.

### I.      Motion 1: The Tribal Court Conviction

Begay alleges that the tribal court did not properly appraise him of his rights

before accepting his guilty plea, and the conviction must therefore be suppressed. (Obj.

at 6.) Under the United States Constitution, "if a defendant's guilty plea is not . . .

voluntary and knowing, it has been obtained in violation of due process and is therefore

void." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Generally, an unconstitutional

prior criminal conviction, such as a guilty plea which was not voluntary and knowing,

cannot be admitted in subsequent proceedings because it is inherently prejudicial. *See*

*Burgett v. Texas*, 389 U.S. 109, 115 (1967) (holding that a conviction obtained in violation

of the Sixth Amendment right to counsel cannot be used "to support guilt or enhance punishment" in a subsequent proceeding).

For tribal-court proceedings, a slightly different standard applies. The Indian Civil Rights Act ("ICRA"), which governs tribal-court proceedings, "modified the safeguards of the Bill of Rights to fit the unique political, cultural, and economic needs of tribal governments." *United States v. Bryant*, 579 U.S. 140, 149 (2016) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978)). "[T]ribal convictions obtained in compliance with ICRA are necessarily compatible with due process of law." *United States v. Shavanaux*, 647 F.3d 993, 1000 (10th Cir. 2011); *see also Bryant*, 579 U.S. at 157 ("Proceedings in compliance with ICRA . . . sufficiently ensure the reliability of tribal court convictions" so they were valid when entered). Thus, if Begay's tribal court conviction complied with ICRA, it complied with due process and should not be suppressed. *See United States v. Bundy*, 966 F. Supp. 2d 1175, 1180 (D.N.M. 2013) (suppressing guilty plea that was "obtained in violation of the due process provision of ICRA").

Among other rights, ICRA requires that tribal courts guarantee "due process of law." 25 U.S.C. § 1302(a)(8). This guarantee of "due process" under ICRA is not coextensive with federal due process. *See Bryant*, 579 U.S. at 140 ("ICRA's right to counsel . . . is not coextensive with the Sixth Amendment Right."). Interpreting ICRA, courts have found that when a tribal code requires a specific procedure to advise a defendant of rights, the code's requirement becomes an ICRA guaranteed procedure. *See Bundy*, 966 F.

7

Supp. 2d at 1179–80 (finding that defendant's plea violated ICRA because defendant was not apprised of rights as required by tribal law). Red Lake code requires that a tribal judge appraise defendants of their rights before any plea. Red Lake Tribal Code Ch. 404.04, subdiv. 4(b). A tribal judge should only accept a defendant's plea if he or she "is satisfied that the plea is made voluntarily and the defendant undest[ood] the consequences of the plea." *Id.* at subdiv. 8. And Red Lake code requires a record of all proceedings "by electronic recording or otherwise."[2] Red Lake Tribal Code Ch. 101.01, subdiv. 3.

*Presumption of Regularity.* A "presumption of regularity" attaches to final judgments, including Begay's tribal court conviction. *Parke v. Raley*, 506 U.S. 20, 29 (1992); *United States v. Miller*, No. 13-CR-1867 WJ, 2014 WL 12796762, *4 (D.N.M. Apr. 11, 2014) (extending presumption of regularity to tribal court). Under this presumption, "[a] defendant bears the burden of proving the unconstitutionality of his convictions by a preponderance of the evidence." *United States v. Coppage*, 772 F.3d 557, 559 (8th Cir. 2014) (quotation marks and citation omitted). To overcome the presumption, Begay must present some evidence to show by a preponderance of the evidence that his prior conviction was unconstitutional. *See id.* at 560 ("Under the 'presumption of regularity,'

---

[2] It is tribal law, not ICRA, that requires a recording. Begay improperly cites Section 1302(c)(5) to suggest ICRA required a recording of his proceeding. (Obj. at 2.) But that section applies only when a tribe "imposes a total term of imprisonment of *more than* 1 year." 25 U.S.C. § 1302(c)(5) (emphasis added). The tribal court imposed a 365-day sentence on Begay, so this provision does not apply to him. *See Bryant*, 394 U.S. at 157 (holding that conviction in compliance with ICRA could be used in a federal prosecution).

and without affirmative evidence from [defendant] to rebut this presumption, it was

permissible for the district court to conclude that [defendant] failed to meet his burden

of proving his prior convictions were obtained in violation of his constitutional right to

counsel."); *Miller*, 2014 WL 12796762, at *4 (requiring affirmative evidence to suppress

tribal guilty plea).

Begay has not produced evidence to meet his burden of proving a violation of

ICRA's due process guarantee.[3] The incomplete recording of the plea hearing does not

render the hearing itself irregular. *See Miller*, 2014 WL 12796762, at *5 ("[S]ilence in

evidence is not sufficient to meet the Defendant's burden to show by a preponderance of

affirmative evidence that the convictions are constitutionally invalid."). The recording

starts in the middle or end of the hearing; unlike the other recordings, which start by

calling the case, the recording of the plea hearing starts with a conversation between

parties and the judge. (Gov't Ex. 7.) It does not include the plea or a recitation of rights,

but there is no evidence in the record that those things did not occur. Begay's evidence is

of a failure of equipment, not a failure of process.

---

[3] Begay objects to the tribal court's use of the phrase "conclusively verify" in evaluating whether Begay met his burden to present evidence. (Obj. at 1.) The Court need not comment on this phrase because the R&R did not require "conclusive verification"; instead, the R&R applied the correct burden by requiring Begay to present evidence to show his rights were violated. (R&R at 31–35.)

According to Begay, because Red Lake code requires that a tribal court keep a record of the proceeding, the Court must assume the recordings capture the entire proceeding.[4] (Obj. at 2, 10–12 (citing Red Lake Tribal Code Chapter 101.01, subdiv. 3).) But Red Lake code does not require an electronic recording—any record of the proceeding is satisfactory. Red Lake Tribal Code Ch. 101.01, subdiv. 3. Begay's plea agreement and the tribal court order documenting the plea hearing both constitute a record of the plea, so the Red Lake court complied with Red Lake code. (*See generally* Gov't Ex. 4.) This Court cannot interpret Red Lake code to require more than a paper record. Going further, even if Red Lake code had a procedural requirement for an electronic proceeding, the Court could not infer a due process error from a procedural error. *See Coppage*, 772 F.3d at 559 ("[I]t is not the duty of the court to guess at the meaning of ambiguous records . . ."). The Court will not suppress the plea because Begay presents no evidence to show an error of due process.

*Lay Counsel.* ICRA permits lay representation for defendants like Begay, whose crime is punishable by at most 365 days in prison, so the mere fact that Begay's counselor was not an attorney does not violate his due process rights. *United States v. Long*, 870 F.3d 741, 747 (8th Cir. 2017) (citing 25 U.S.C. § 1302(c)(2)) ("Because lay counsel are admitted

---

[4] Begay asks this Court to place the burden on the Government to "offer[] . . . evidence that the recordings . . . completely capture the Tribal Court proceedings." (Obj. at 3.) But because of the presumption of regularity, it is Begay's burden to present evidence to show an error, not the government's burden to prove the completeness of the record. *Coppage*, 772 F.3d at 560.

to practice before the tribal court, we conclude that [Defendant] was represented by counsel in the tribal-court proceeding . . .”). Because Begay does not present evidence to show an error in the tribal court proceeding, the fact that Begay was represented by lay counsel, rather than an attorney, does not impact the Court's analysis.

If Begay was represented by an attorney, the Court could presume that defense counsel explained the nature of the offense to the defendant. *See United States v. Gillette*, 17-CR-30122-RAL, 2018 WL 1446410, at *5 (D.S.D. Mar. 23, 2018) (citing *Henderson v. Morgan*, 426 U.S. 637, 647 (1976)). This presumption might even correct errors in court proceedings. *See id.* at *1 (explaining that "It is reasonable to presume that [Defendant], having [experience with the criminal justice system] and represented by a licensed attorney" understood the nature of his crimes even though the trial judge did not read the indictment out loud). But here, there is no error to be corrected. This Court will not rule on whether the presumption of regularity extends to lay counselors representing defendants at tribal court because the Court finds no error. Nor will the Court consider whether a lay counselor would correct a constitutional error because Begay failed to show that he was not apprised of his rights before he pled guilty.[5]

---

[5] The Court believes that the presumption of regularity would extend to lay counselors in tribal court because, although they are not attorneys, lay counselors are admitted to practice law with tribal courts and generally are experienced with tribal proceedings. *See Long*, 870 F.3d at 747 (explaining the Rosebud Sioux Tribe's requirements for appointing lay counsel).

Thus, the Court denies Begay's motion to suppress his tribal court guilty plea.

*Collusion.* In the alternative, Begay argues that his plea should be suppressed because it resulted from improper government collusion. (ECF No. 71 at 9–12; Obj. at 12.) A confession should be suppressed when a defendant shows "the existence of improper collaboration between federal and state or local officers." *United States v. Alvarez-Sanchez*, 511 U.S. 350, 359 (1994). Routine cooperation between local and federal authorities does not establish collusion; the exchange of information among law enforcement is important to crime prevention. *Id.* at 360.

In the double jeopardy context, state officials improperly collude with federal officials when the state acts as "merely a tool of the federal authorities" or when the state's prosecution is "a sham and a cover for a federal prosecution."[6] *Bartkus v. Illinois*, 359 U.S. 121, 123–24 (1959). "[T]he government's conduct must shock the conscience of the court. . . . [Only a] narrow band of the most intolerable government conduct" is unconstitutional. *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003) (quotation and citation omitted).

---

[6] The *Bartkus* court considered the circumstances in which improper collusion prohibits a subsequent prosecution by a separate sovereign. 359 U.S. 121, 124 (1959). Generally, a different sovereign can prosecute a defendant for the same crimes without implicating double jeopardy. *Id.* at 132–33. But an exception to double jeopardy exists when "the state prosecution was a sham and a cover for federal prosecution." *Id.* at 124. Because double jeopardy cases provide helpful context for when improper collusion between state and federal authorities violates a defendant's constitutional rights, the Court considers these cases in evaluating whether Begay's plea should be suppressed.

The evidence here shows routine cooperation between Red Lake law enforcement and the FBI. The FBI interviewed Begay just three days after Red Lake law enforcement officers brought him into detention. (Gov't Ex. 1.) They asked Begay to submit to a DNA test. (*Id.*) Then, for several months, the FBI awaited DNA results, as shown by DNA status reports from the Bureau of Criminal Apprehension ("BCA") to Montgomery in October and November 2020 and in January, February, and March 2021. (Gov't Ex. 8.) There is nothing suspicious about awaiting a DNA test before an indictment.[7] Admittedly, the FBI requested Begay's tribal criminal record at an unusual time—just five days after Begay pled guilty in tribal court. (ECF No. 67 at 13.) But this alone does not establish improper collusion. *See Bartkus*, 359 U.S. at 122–24 (finding no improper collusion when evidence was gathered after prior prosecution because no evidence showed the state "was merely a tool of the federal authorities").

## II.     Motion 2: *Miranda* Waiver

The Constitution guarantees a criminal defendant the right not to incriminate himself. U.S. Const. amend. V. Because of this right, the government generally cannot use the defendant's statements against him at trial if he made them during a custodial

---

[7] Nor does the evidence suggest that the government let its case against Begay go dormant until Begay entered the tribal plea. Begay argues the DNA evidence was unnecessary to indict Begay because he admitted to consensual sex with the victim in his interview. (Obj. at 12.) But that statement is now the subject of a suppression motion, (ECF No. 26), and if the Court suppressed the interview, the DNA evidence would be important to the government's case.

interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). But if the government

provides a defendant with the warnings *Miranda* requires and the defendant waives his

rights voluntarily, knowingly, and intelligently, then the government may use at trial

statements the defendant made after the advisement and waiver of his rights. *United*

*States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011). Begay asserts that his statements to

Montgomery were not made knowingly and voluntarily because Begay has diminished

intellectual capacity, cannot read, and did not understand the consequences of his waiver.

(Obj. at 13.)

"The government has the burden of proving the validity of the *Miranda* waiver by

a preponderance of the evidence." *United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir.

2004). A valid *Miranda* waiver must be (1) voluntary and (2) "constitute a knowing and

intelligent relinquishment or abandonment of a known right or privilege." *United States*

*v. Edwards*, 451 U.S. 477, 482 (1981). Courts consider the totality of the circumstances in

assessing whether a *Miranda* waiver is voluntary, knowing, and intelligent. *Vinton*, 631

F.3d at 483; *see Edwards*, 451 U.S. at 482 (noting courts are to consider "the particular facts

and circumstances surrounding that case," including the defendant's background,

experience, and conduct in assessing the validity of a *Miranda* waiver) (citation omitted).

*Voluntary waiver.* A *Miranda* waiver is voluntary when it is "the product of a free

and deliberate choice rather than intimidation, coercion, or deception." *Vinton*, 631 F.3d

at 483 (quotation and citation omitted); *see United States v. Sanchez*, 614 F.3d 876, 883 (8th

Cir. 2010) (explaining that in determining voluntariness, courts consider whether officers extracted statements "by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired") (citation omitted). In contrast, a *Miranda* waiver is involuntary when a defendant's "mental impairments caused [his] will to be overborne." *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990).

A defendant's mental condition, including intellectual ability, is a "significant factor" in evaluating whether a *Miranda* waiver was voluntary. *Colorado v. Connelly*, 479 U.S. 157, 165 (1986) (holding that the voluntariness standard for a due process inquiry and a *Miranda* inquiry are the same); *see also United States v. Makes Room*, 49 F.3d 410, 415 (8th Cir. 1995) (rejecting defendant's assertion that "his waiver and confession were involuntary because he [was] of average or lower than average intelligence"). But the defendant's mental condition does not render a *Miranda* waiver involuntary without evidence of government coercion. *Connelly*, 479 U.S. at 164.

The recording of Begay's interview establishes that the officers did not intimidate, coerce, or threaten him, either explicitly or implicitly, during questioning. (*See generally* Gov't Ex. 1.) The officers calmly read Begay his *Miranda* rights and asked three times if Begay understood his rights and if he had any questions. (*Id.* at 0:27–0:52; 1:30–1:32; 1:35–1:36; 2:33–2:41.) Begay answered that he understood. (*Id.* at 1:32–1:34; 2:35–2:46.) When Begay asked questions, he did not ask about his *Miranda* rights, but about the DNA swab.

15

(*Id.* at 2:35–2:46.) Begay does not claim that the officers used tactics that caused his will to be overborne, and the record contains no evidence that Begay's "decision to speak with them was the product of anything other than a free and unconstrained choice." *Vinton*, 631 F.3d at 482. Considering the totality of the circumstances of Begay's *Miranda* waiver, the Court does not find that Begay's will was overborne nor that the officers engaged in coercive activity.[8] *Makes Room*, 49 F.3d at 415.

   *Knowing and intelligent waiver*. Along with being voluntary, a *Miranda* waiver must be knowing and intelligent. *Edwards*, 451 U.S. at 482. In other words, the defendant must be fully aware of "both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Gallardo*, 495 F.3d 982, 990 (8th Cir. 2007) (citation omitted). As noted above, Montgomery read Begay his *Miranda* rights and Begay verbalized his understanding of each right. (Gov't Ex. 1 at 0:27–0:52; 1:30–1:36; 2:33–2:46.) Early in the interview, Begay said that he feared prison and that his mother told him to remain silent, which tends to show Begay understood he could invoke his rights and the risks of waiving his rights. (*Id.* at 0:13–0:15; 1:12–1:19.) Begay then responded to Montgomery's questions, showing comprehension of the process. (*Id.* at 1:32–1:34; 2:35–2:46.) The record establishes that Begay understood the nature of his rights and what he

---

[8] The Court reaches this conclusion even though Begay cannot read. Because Montgomery read Begay's rights to him and asked if he understood them several times, Begay's literacy does not affect whether he understood his rights. *See Vinton*, 631 F.3d at 483 (finding *Miranda* waiver was voluntary even though defendant could not read and write because the *Miranda* waiver form was read out loud to defendant).

was giving up. Thus, his waiver was knowing and intelligent, and the Court will not suppress his statements.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.    Defendant's objection to the Report and Recommendation (ECF No. 82) is

OVERRULED;

2.    The Report and Recommendation (ECF No. 81) is ACCEPTED;

3.    Defendant's Motion to Suppress Statements (ECF No. 26) is DENIED; and

4.    Defendant's Motion to Suppress Tribal Court Plea Agreement (ECF No. 27)

is DENIED.

Dated: March 8, 2022                                            BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge